## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

**DARREN P. SULLIVAN,**

        **Plaintiff,**

**-v-**                                     **CASE NO. 2:06-CV-344-FTM-29-DNF**

**MICHAEL J. ASTRUE[1],**
**Commissioner of Social Security,**

        **Defendant.**
_____/

### OPINION AND ORDER[2]

    This matter is before the Court on the plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of Social Security of the Social Security Administration ("the Commissioner") denying his claim for disability, disability insurance benefits, and Supplemental Security Income (SSI)[3]. The Plaintiff timely pursued and exhausted his administrative remedies making this claim ripe for review

---

[1]     Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should, therefore, be substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]     Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference dated September 22, 2006. (Doc.# 12).

[3]     Because the disability definitions for DIB and SSI are identical, cases under one statute are persuasive as to the other. Patterson v. Bowen, 799 F.2d 1455, 1456 (n.1 (11th Cir. 1986); McCruter v. Bowen, 791 F.2d 1544, 1545 n.2 (11TH Cir. 1986).

under section 216(I) and 223, respectively of the Social Security Act, as amended and

disabled under section 1614(a)(3)(A) of the Act.  The Commissioner has filed a

transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate

page number), and the parties have filed legal memoranda.  For the reasons set forth

below, the Court finds that the Commissioner's decision is due to be **AFFIRMED**.

I.     **SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ'S DECISION
       AND STANDARD OF REVIEW**

The plaintiff is entitled to disability benefits when he is unable to engage in

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to either result in death or last for a continuous period

of not less than twelve months.  42 U.S.C. §§ 423 (d) (1)(A); 1382c(a)(3)(A).  The

Commissioner has established a five-step sequential evaluation process for determining

whether the plaintiff is disabled and therefore entitled to benefits.  *See* 20 C.F.R. §

416.920(a)-(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  The plaintiff

bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the

Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The ALJ notes in her decision that the plaintiff had previously filed an application

for disability, disability insurance benefits and Supplemental Security Income on May 7,

2003 (protective filing date), alleging disability since March 16, 2002. (Tr. 53-55, 320-

23).  The plaintiff's application was denied initially and upon reconsideration (Tr. 40-42,

45-47, 325-27, 330-32).  The plaintiff was represented by counsel and testified at the

hearing held on July 28, 2005, along with an impartial vocational expert.  Administrative

Law Judge (ALJ) Delores McNerney denied benefits in her decision dated November 8, 2005. (Tr. 18-28). The plaintiff requested a review of the hearing decision and on June 23, 2006, the Appeals Council denied the request. (Tr. 4-6). The plaintiff has exhausted his administrative remedies, and timely filed a complaint with this Court. At Step 1 the ALJ found the plaintiff had not engaged in substantial gainful activity since his alleged onset date of March 16, 2002. (Tr. 64). At Step 2 the ALJ found the plaintiff suffered from chronic pain secondary to degenerative back pain and mild hip dysplasia, which were found to be severe within the meaning of the Regulations. (Tr. 20). At Step 3 the ALJ found these impairments did not meet or equal, either singly or in combination with any other impairments, any of the impairments in Appendix I, Listing of Impairments, 20 C.F.R. §§ Part 404, Subpart P, Regulations No. 4. (20 C.F.R. 404.1520(d) and 416.920(d). (Tr. 21). At Step 4 the ALJ determined the plaintiff had the residual functional capacity to perform past relevant work as a control technician, which is a light, skilled job. (Tr. 27). At step 5, the burden shifts to the Commissioner only after the plaintiff has proven that he is unable to engage in past relevant work and to determine if there is other work available that the plaintiff can perform. 20 C.F.R. §§ 494.1520(g), 416.920(g).

The Court reviews the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards. Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1158 (11th Cir. 2004). Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Crawford, 363 F.3d at 1158. Even if the evidence

preponderates against the Commissioner's findings, the Court must affirm if the decision reached is supported by substantial evidence. Crawford, 363 F.3d at 1158-59.

The Court does not decide facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). The magistrate judge, district judge and appellate judges all apply the same legal standards to the review of the Commissioner's decision. Dyer, 395 F.3d at 1210; Shinn ex rel. Shinn v. Commissioner of Social Security, 391 F.3d 1276, 1282 (11th Cir. 2004); Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004).

## II.  REVIEW OF FACTS AND CONCLUSIONS OF LAW

### A.      Background Facts:

The plaintiff was born on May 17, 1966 and was forty-four years old at the time of the ALJ's decision. (Tr. 340). The plaintiff completed high school and received electrical training and was licensed in the year 1984. (Tr. 340). The plaintiff worked as an electrician doing commercial work for 15 years. The Plaintiff was employed for six months as an electrical technician for the sewage treatment plant for the City of Venice until March 16, 2002. (Tr. 381).

The plaintiff alleges his pain began when he sprained his back. The plaintiff alleges this happened during his apprenticeship as an electrician. On February 26, 1998, the plaintiff was involved in a car accident where he was rear-ended resulting in injury to his neck. When the plaintiff was seen at the hospital he reported that he had not been wearing a seat belt and had hit the top of his head on the steering wheel. The plaintiff complained of pain in his neck and the back of his head.

4

At the hospital emergency room, the plaintiff received Mepergan for his discomfort. C-spine x-rays were taken which showed significant muscle spasm but there was no evidence of fracture or dislocation.  The plaintiff received a prescription for Flexeril and Lortab and advised to follow-up with his physician. (Tr. 167).

The plaintiff was seen  at the emergency room on March 2, 1998, with continued complaints of neck pain and  was released with a soft C-collar and a prescription for Lortab, Flexeril, and Naproxen..  He was advised to follow up with an orthopedist in one to three days, with no activities until cleared by the orthopedist.  (Tr. 171).  On April 28, 1998, the plaintiff received an MRI of the cervical spine which revealed a "[m]inimal concentric disc bulge at C6-7.   There is no disc herniation or spinal or foraminal stenosis at any level".  (Tr. 172).

The plaintiff was seen at the emergency room on January 22, 1999, for neck pain. He advised he had been taking over-the-counter medications for the past eleven months and was seeing neurosurgeons and an orthopedic surgeon.  "[D]iagnostic Impression: Neck strain and spasm."   The plaintiff was discharged in stable condition with a prescription for Soma to be taken four times a day and Lortab to be taken every fours as needed for pain.  The plaintiff was advised to follow-up with neurologist or orthopedic surgeon for follow-up treatment, apply heat to the neck and return if he had any further problems. [165-168].

The plaintiff was seen at the emergency room on May 11, 1999,  for pain on the right side of his neck and thorax as a result of lifting a 120 pound transformer which was evaluated as "[A]cute on chronic pain secondary to lifting."  The plaintiff was prescribed Toradol and a Medro Dosepak and was advised to alternate ice and moist heat.  The plaintiff was further prescribed Lortab (with no refills) to use as directed.  The plaintiff was released in stable condition. (Tr. 162-163).

The plaintiff was seen on April 16, 1999, at the emergency room for pain on the left side of his neck which he said "radiates to the left arm".  "(D)ifferential Diagnosis: Chronic neck pain.  Rule out ruptured disc".  The plaintiff was discharged in stable condition with Celebrex and Lortab.  The plaintiff was advised to rest, use ice packs for his neck and follow-up with his physician".  (Tr. 164).

On July 28, 2000, a lumbar spine scan was taken [with five difference views of the spine] which revealed, "[I]mpression: Normal lumbar spine".  Raul R. Verde, M.D. On August 9, 2000, the plaintiff was seen by Ronald Heromin, M.D., an orthopedic physician.  The plaintiff reported that for a period of 12 years he had severe pain in his right hip, groin and anterior thigh.  Dr. Heromin noted that plaintiff was taking Vicodin for the pain and that he was depressed because he could not do things he enjoyed. [Tr. 183].

An MRI of the plaintiff's right hip on August 18, 2000, revealed, "[I]mpression: There is a slightly shallow right acetabulum with slight lateral displacement of the femoral head.  This may in fact be the sequela of prior mild congenital hip dysplasia.  At

any rate, however, I do not identify any evidence of bone marrow edema.  There is no evidence of osteonecrosis.  There is no evidence of avascular necrosis.  Cartilaginous surfaces remain intact.  The labrum of the hip is intact as well, bilaterally.  Adjacent soft tissues are satisfactory".  James White, M.D. [Tr. 156-57].  Also on August 18, 2000, a bone scan of the plaintiff's whole body revealed:  "[I] mpression: 1.  Small focal area of increased activity superior and laterally along the acetabulum presumed arthritic in nature.  Again, the patient does have what appears to be slight congenital deformity of the acetabulum.  This clearly could result in accelerated arthritic change.  2.  There is also a small focal area of increased activity of the left AC joint presumed degenerative in nature".  James White, M.D. [Tr. 158-159].

On October 19, 2000, Dr. Heromin recommended conservative management of the plaintiff's right hip osteoarthritis.  Dr. Heromin also advised the plaintiff he was not a candidate for surgical intervention. The plaintiff's Lortab was renewed and he was started on Celebrex.  By March of 2001, the plaintiff's assessment was: "(1) right hip greater trochanteric bursitis, (2) right hip arthralgia, and (3) chronic osteroarthritis" .  The plaintiff's hip was injected with Depo-Medrol and Marcaine.  (Tr. 179).   The plaintiff returned on August 16, 2001 and reported no relief from his right hip pain and that the pain in his left hip was increasing.  The plaintiff again received an injection of Depo-Medrol and Marcaine. [Tr. 176].

On October 17, 2001, the plaintiff was evaluated by Kenneth Giraldo, M.D., of Neurological Associates for his complaints of persistent low back and right hip pain.  He also reported numbness in his left foot and hands and weakness in his right knee and hip.

7

[Tr. 200].  Dr. Giraldo recommended bilateral lumbar facet joint blockages from T12-L1 - L5-S1.  The procedure was done on November 8, 2001. [Tr. 198-201].  The plaintiff reported in December of 2001 that he had 75% pain relief after the procedure for about two weeks, but advised the pain had returned. [Tr. 197].  The plaintiff continued with pain medications and Soma, a muscle relaxant.

In January 2002, the plaintiff's back pain had worsened even though he continued the pain medications. [Tr. 196}.  On March 15, 2002, the plaintiff had  bilateral lumbar medium branch block injections which provided 70 percent pain relief.   [Tr. 192-193].  On May 24, 2002, the plaintiff had  radio frequency thermal coagulation of right lumbar median branches performed.  On May 31, 2002, the plaintiff received left lumbar median branch radio frequency thermal coagulation of  L2-L5, S1.   On July 19, 2002, a three level lumbar discogram was performed at Sarasota Memorial Hospital. [Tr. 210-212].

Despite these procedures, the plaintiff continued  to  complain  of chronic back, neck and right hip pain.  The plaintiff went to Kevin McGaharan, M.D. in early 2003. [Tr. 290].  The plaintiff continued with pain medications and muscle relaxants throughout this time period and most of 2004 and 2005.  These medications consisted of MS Contin, MSIR, Restoril and  Soma. [Tr. 263-279].  The plaintiff was prescribed a replacement cane to assist in his walking in April of 2005. [Tr. 263].

On June 28, 2005, Dr. McGaharan noted that the plaintiff had been seen by an orthopedic surgeon who did not recommend hip replacement surgery because of  his young age.  Dr. McGaharan noted: "[C]onsidering his poor education, high school graduate, work experience and physical demands of his previous work I doubt that he will

be able to return to gainful employment because of the severe pain from the avascular necrosis and lumbar spondylosis." [Tr. 306].   Dr. McGaharan also completed a "Medical Source Statement of Ability to Do Work-Related Activities (physical) . [Tr. 312-315, 319].  He found the plaintiff to only be able to "[s]tand/walk 2 hrs. in an 8 hr. day, require a cane for ambulation; alternate sitting and standing (because of his pain and discomfort) and did not allow for any climbing, crouching, crawling; occasional balancing, kneeling, stooping and limited exposure to hazards (machinery, heights, etc..).  He felt the plaintiff would be unable to make any fast moves because of the pain in his hips and the pain medication would make his reaction time slow and decrease his awareness of his surroundings .  [Tr. 312-315, 319].

**B.    Specific Issues:**

**(1)    The Commissioner Erred in Evaluating the Plaintiff's Complaints of Pain in Accordance with Eleventh Circuit Pain Standards**

The plaintiff contends the Commissioner failed to properly evaluate the plaintiff's complaints of pain and that the evidence reflects severe medical conditions which could reasonably be expected to cause his alleged pain.

The Plaintiff's argument is without merit and the ALJ applied the proper legal standard.  The ALJ found that the plaintiff's "statements concerning the intensity, duration and limiting effects of [his] symptoms [were] not entirely credible."  The ALJ presented sufficient reasons for her conclusion. [Tr. 21-27].

In this case, the ALJ found the plaintiff's degenerative back pain and hip dysplasia were severe impairments. [Tr. 20, Finding 3].  The ALJ noted that the objective evidence

did not confirm the plaintiff's pain was of the severity he alleged. [Tr. 22, 27]. The July 2000 x-rays of the plaintiff's lumbar spine were normal; the July 2000 x-rays of the right hip showed residuals of congenital hip dysplasia; the August 2000 MRI of the right hip confirmed this diagnosis and showed no evidence of asteonecrosis or avascular necrosis. [Tr. 22, 156]. The August 2000 MRI of the right hip confirmed this diagnosis and the August 2000 whole body scan showed only a slight congenital abnormality to the acetabulum. [Tr. 22,1 58]. The June 2001 x-rays of the thoracic spine showed minor osteophytosis and the August 2001 MRI of the lumbar spine showed mild central stenosis at L4-5 but no herniated disc. [Tr. 22, 186]. The August 2001 x-rays of the right hip showed no progression of the disease and the July 2002 CT of the lumbar spine showed only degeneration at L5-S1 [Tr. 22, 211]. The three level discogram in July 2002 showed only a degenerative disc at L5-S1 with no strong subjective pain response at any level. [Tr. 22, 210].

The plaintiff alleges that he cannot work because of the chronic pain in his spine, back and right hip yet the tests show minimal findings and the plaintiff participates in activities such as mowing grass and is able to drive. [Tr. 22, 27, 226, 384]. Also, the plaintiff testified to significant side-effects from his medications, yet Dr. McGaharan repeatedly noted that the plaintiff had no complications from his opiate maintenance. [Tr. 281, 285, 287, 291, 387].

A claimant's subjective complaints alone, cannot establish disability; the record must include medical signs and findings which show the existence of a medical impairment which when considered with all the other evidence, would lead to a

10

conclusion that the claimant was disabled.  48 U.S.C. 423(d)(5)(A), 20 C.F.R. §§ 404.

1529(a), 416.929(A).  *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991).

The ALJ's pain and credibility assessment is supported by substantial evidence.

**(2)     The ALJ Has a Duty to Develop the Evidence.**

The plaintiff argues that the ALJ violated the Commissioner's duty to recontact a

medical source pursuant to 20 C.F.R. §§ 404.1512(e), 416.912(e), simply because the

ALJ observed that Dr. McGarahan did not order any objective tests during his treatment

of the plaintiff.  The regulation only requires an ALJ to recontact a medical source if a

report is ambiguous or needs clarification.  Dr. McGarahan's statement was unambiguous

and did not need clarification.  It simply was unsupported by his treatment records and

other evidence of record, including the only objective tests found in the record.   The ALJ

was not required to further develop the record because the evidence was sufficient to

support the ALJ's decision and  the  plaintiff  failed to provide evidence to support his

claim. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Ellison v. Barnhart*, 355 F.3d

1272, 1276 .

**(3)     The Commissioner Erred in Evaluating the Plaintiff's Mental
Impairment and Associated Functional Limitations**

The Plaintiff contends that the ALJ erred in finding that the plaintiff had no severe

mental impairment, i.e. his depression.  The plaintiff has the burden of proving that he

has a severe physical or mental impairment.  *Yuckert*, 482 U.S. 137, 146 n.5 (1987) (a

claimant must bear the burden "at step two that he has a medically severe impairment or a

combination of impairments").

11

The record does not show that the plaintiff's depression significantly affected his ability to work.  The ALJ noted that Dr. McGaharan diagnosed the plaintiff with depression in an August 2003 disability statement but he was only prescribed Celexa. The plaintiff was not referred for any mental health treatment.  [Tr. 24, 286].  The plaintiff's lack of mental health treatment undermines his claim of a severe mental impairment.  20 C.F.R. §§ 404.1529(c)(3)(v), 416.l929(c)(3)(v).  Since the plaintiff was prescribed medication for depression and not mental health treatment indicates that the medication alleviated any symptoms he may have had, which provides further evidence that he did not have a severe mental impairment.  *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984).

Dr. McGaharan completed a form indicating only slight limitations in the ability to interact appropriately with the public, supervisors and co-workers and to respond to either work pressures in a usual work setting or changes in a routine work setting. [Tr. 25, 26, 316-17).   Dr. Bernstein, a consultative psychologist, assessed and evaluated the Plaintiff on September 24, 2003 and found no limitations. {Tr. 26, 225-26].  Psychiatrist Nancy Dinwoodie, M..D. and Arthur Hamlin, Psy.D. reviewed the record on February 16 and November 10, 2003, respectively; and concurred the plaintiff had no severe mental impairment.  [Tr. 19-20, 227, 241].  The ALJ properly concluded that the plaintiff had no severe mental impairment.

**(4)      The Commissioner Erred in Evaluating the Plaintiff's Capacity
to Perform Past Relevant and Other Work and the Commissioner
Erred in Failing to Consider the Plaintiff's Non-Exertional
Impairments**

The plaintiff argues that the ALJ should not have found the plaintiff able to
perform work at the light exertional level and further find he could return to his past
relevant work as a control technician.[4]   The ALJ's RFC finding was supported by
substantial evidence and she properly articulated her rationale for the weight accorded the
medical source statements and assessing the plaintiff's credibility.   There is no mention in
the record that the plaintiff has manipulative limitations.   The only mention that was
made of such limitations appears in the plaintiff's hearing testimony.   Subjective
complaints are insufficient to establish a disability.   42 U.S.C. §§ 423(d)(5)(A).   *Edwards
v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991).

The plaintiff further argues that the conclusion he could return to his past work is
not supported by substantial evidence because the ALJ failed to obtain testimony from a
vocational expert on this issue.

The ALJ need only use a VE after determining at Step 4 that a claimant cannot
return to past relevant work.   *Jones sv. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) (the
Commissioner may meet her burden at Step 5 through reliance on the Grids or through
VE testimony).   In the instant case, the VE  testified that the plaintiff's past work as a

---

5          The ALJ noted that the plaintiff only performed this job for six months, but found it to be relevant
work experience. [Tr. 27].   The plaintiff does not contest this finding.

control technician required light work. [Tr. 27, 2409].    The ALJ found the plaintiff had an RFC for a wide range of light work, therefore she properly found the plaintiff could return to his past relevant work as a control technician. [Tr. 27, Finding 6].

The use of a VE is required at Step 5 if the claimant has non-exertional limitations which prevent a claimant from performing a full range of work at a given exertional level. *Philips v. Barnhart*, 357 F.3d 1232, 1240 N.8 (11th Cir. 20044).   In this case, the only non-exertional limitations that the ALJ found were occasional postural limitations and slight or moderate limitations in responding appropriately to supervision, co-workers, and work pressures. [Tr. 21, Finding 21].  A limitation to occasional postural activities does not prevent a claimant form performing substantially all of the exertional requirements of light work.  Thus, finding that the plaintiff could return to his past relevant work, the ALJ also found that use of the Medical-Vocational Guidelines would have also resulted in a finding of not disabled at Step 5. [Tr. 27].

Finally, the ALJ asked the VE to consider Dr. McGaharan's June 2005 assessment of the plaintiff's abilities and the VE identified a significant number of jobs that the Plaintiff could perform, i.e. small products bench assembler, production inspector, and wrap and package jobs [Tr. 410-11].  In finding the plaintiff could return to his past relevant work, the ALJ also found the Medical-Vocational Guidelines would have served as a framework for a finding of not disabled at Step 5 even if she had adopted Dr. McGaharan's assessment. [Tr. 27].

14

**(5)      The ALJ Erred by Failing to Give Adequate Weight to the
Opinions of His Treating Physician**

The ALJ's RFC finding limited the plaintiff to a wide range of light work.  The
ALJ considered all of the opinions of record, including the treating physicians, examining
physicians and reviewing physicians.  20 C.F.R. §§ 404.1527, 416.927.  Dr. McGarahan's
opinion limited the plaintiff to lifting and carrying 20 pounds occasionally and 10 pounds
frequently; standing and walking two hours in an eight hour day with a hand-held
assistive device; sitting six hours in an eight hour day with a sit/stand option and never
climbing, crouching or crawling with occasional balancing, kneeling or stooping and
slight limitations in being able to interact with the public, supervisors and co-workers.
The ALJ adopted most of Dr. McGarahan's assessment but concluded that substantial
evidence did not support all of it.  The ALJ noted that Dr. McGaharan based his findings
with regard to the plaintiff's ability to lift, carry, sit and stand on the "radiographic
evidence of severe destruction of the femoral heads," but the diagnostic test did not
support this conclusion. [Tr. 25, 313].  Rather the MRI of August 18, 2000, of the right
hip showed a slight lateral displacement of the femoral head. [tr. 156]. The August 16,
2001, radiographs of the pelvis and right hip showed no significant progression of the
disease and good joint space preservation. [Tr. 22, 178].  Good cause exists to discount a
treating physician's opinion when it is not supported by the evidence.  *Phillips*, 357 F.3d
at 1241.

15

No other treating physician has assessed any limitations or offered anything other than conservative treatment for the plaintiff.  Since 1998, the plaintiff has been treated for complaints of neck, back and hip pain. [152-173].   Despite these complaints, the plaintiff continued to work until March 16, 2002. [Tr. 381].  The evidence does not show that anything significant occurred in March 2002 to exacerbate or make his condition worse.  All testing shows mild findings.  Since the alleged onset date, the plaintiff has seen only Dr. McGaharan, a physiatrist who specializes in rehabilitation medicine. [Tr. 291-92].  Dr. McGaharan's treatment has consisted of conservative care, mostly prescribing medication and the recommendation of exercise. [Tr. 23-25, 263-292, 303.06].

The reviewing physicians, Drs. Kline and  Gustin, reviewed the record and agreed the plaintiff could perform light work with occasional postural activities.  Dr. Gustin added environmental restrictions.  Dr. McGaharan, the only treating physician to assess limitations, did not include any environmental restrictions and at the hearing the plaintiff agreed that he had no environmental limitations. [Tr. 315, 4080].

In the Eleventh Circuit, opinions of reviewing physicians, standing alone cannot constitute substantial evidence.  In this case, Dr. Kline's opinion is supported by other evidence of record, including Dr. McGaharan's assessment.  *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987)[5].  The ALJ properly gave great weight to Dr. Kline's opinion.

---

[5]     State Agency consultants are considered experts in the Social Security disability programs and their opinions may be entitled to great weight if their opinions are supported by the evidence in record.  20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2); SSR 96-6p.

16

### III.  CONCLUSION

For the foregoing reasons, the ALJ's decision is consistent with the requirements of law and supported by substantial evidence.  Accordingly, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g).  The plaintiff is not entitled to a period of disability or disability insurance benefits under sections 216(I) and 223 of the Social Security Act.   The plaintiff is not eligible for supplemental security income under sections 1602 and 1614(a)(3)(A) of the Social Security Act.  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE and ORDERED** in Chambers at Ft. Myers, Florida, this 18th day of September, 2007.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies:
All Parties of Record
All Counsel of Record

17